IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEALED, | § | FILED UNDER SEAL PURSUANT |
| | § | TO 31 U.S.C. § 3729, et seq. |
| Plaintiffs, | § | |
| | § | No. 4:26-mc-1173 |
| v. | § | |
| | § | |
| SEALED, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | | |

# FILED UNDER SEAL

**(ATTENTION SEAL CLERK)**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* AXIOM SPACE, INC. | § | FILED UNDER SEAL PURSUANT |
| | § | |
| | § | TO 31 U.S.C. § 3729, et seq., |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 4:26-mc-1173 |
| VAST, INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**RELATOR'S ORIGINAL COMPLAINT**

Plaintiff-Relator Axiom Space, Inc. ("Relator Axiom" or "Axiom"), on behalf of the United States of America, files this Complaint against Defendant VAST, INC. ("Defendant VAST" or "VAST") to recover damages and civil penalties arising from false claims made or caused to be made, and/or presented or caused to be presented, to the United States and its agents and intermediaries in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*.

## I. PRELIMINARY STATEMENT

1. For decades, the National Aeronautics and Space Administration ("NASA") has led the pursuit of space exploration and the related scientific advancement of knowledge as a public good—pushing the boundaries of what is possible and expanding humanity's reach. In recent years, NASA has worked collaboratively with private industry to enable private missions to the International Space Station ("ISS") referred to as Private Astronaut Missions. Private providers of these missions contract with NASA to complement and extend that longstanding leadership, reflecting the same commitment to progress while engaging in new sources of innovation and capability. Together, these efforts demonstrate the best of human progress—curiosity, ingenuity, and a commitment to venture into the unknown in ways that can drive meaningful advances.

2. But those ambitions are inseparable from the realities of space travel: it remains an unforgiving environment where the margin for error is slim and the risks are significant, even in the most carefully planned missions. Precisely because of that risk, NASA has long acted as a careful steward, partnering only with highly qualified participants and subjecting missions and providers to rigorous review and screening, all to ensure safety while advancing these shared goals.

3. Consistent with that framework, Axiom has worked to establish itself as a leader and trusted partner in advancing Private Astronaut Missions ("PAMs"), in service of NASA's shared objectives. Through significant investments in technology, operational rigor, and mission planning, Axiom has developed proven capabilities that support safe and sustainable private spaceflight, while contributing to the broader ecosystem that NASA cultivates. Axiom's efforts align commercial innovation with the high standards necessary to operate in one of the most demanding environments known. That role—and the trust it requires—depends on the integrity of the representations made by participants in NASA's programs and in connection with the work for which they seek payment.

4. To further its goal of executing PAMs, the United States of America, acting through NASA, has entered into a number of Basic Ordering Agreements ("BOAs") with providers to perform these missions. The BOAs are indefinite-delivery, indefinite-quantity umbrella contracts. Under the BOAs, Mission Specific Orders ("MSOs") are awarded by NASA for each of the NASA-supported Private Astronaut Missions. Axiom was awarded the first four MSOs and successfully delivered on them, helping NASA create a safe and viable private human spaceflight mission industry through commitment and hard work, thereby earning a track record of success.

5. This action arises from Defendant VAST's efforts to obtain payment under Basic Ordering Agreement No. 80JSC026G0004 and a Mission Specific Order that NASA issued thereunder, including through the submission of a deliverable that falsely represented the work product and capabilities as its own, when in fact VAST's submission was a misappropriation of Axiom's accumulated experience, investment, and proprietary materials, as well as other related

false statements. This is an issue of deep public concern—entrusting the public interest, safety, and success of our nation's space program with public-private partnerships requires those private partners to demonstrate candor, capability, original work, and integrity. Passing off Axiom's accumulated experience from four successful PAMs as VAST's own does not satisfy that critical standard.

## II. JURISDICTION AND VENUE

6. This action arises under 31 U.S.C. § 3729, *et seq*. This Court has subject matter jurisdiction over this action under 31 U.S.C. §§ 3730(b) and 3732(a) and 28 U.S.C. §§ 1331 and 1345.

7. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391(b)-(d) and 31 U.S.C. § 3732(a). A substantial portion of the events underlying this lawsuit took place in this District, including at the Lyndon B. Johnson Space Center at 2101 NASA Parkway, Houston, TX 77058.

8. This case is based on the knowledge of Relator Axiom, an "original source" as that term is defined in 31 U.S.C. § 3730.

9. This Complaint has been filed under seal and shall remain under seal for at least sixty (60) days and until the Court so orders.

10. A copy of this Complaint and a disclosure of substantially all material evidence and information Axiom possesses will be served on the United States Attorney General and the United States Attorney for the Southern District of Texas, as required by 31 U.S.C. § 3730(b)(2).

11. All conditions precedent required by 31 U.S.C. § 3730 have been satisfied.

## III. PARTIES

12. Relator Axiom is a resident of the State of Texas and has almost a decade of experience making advances in private astronaut missions, spacesuit development, space station construction, and philanthropic initiatives. Relator Axiom has entered into two BOAs with the United States Government, through NASA, for the purpose of executing PAMs. Relator Axiom is also the originator and owner of the proprietary information Defendant VAST misused in

knowingly making misrepresentations and false claims to the United States, as well as the party with the experience and capabilities that VAST passed off to NASA as its own.

13. Defendant VAST is a Delaware corporation with a principal place of business in California at 2851 Orange Avenue, Long Beach, CA 90755. VAST may be served with process via its registered agent for service, Incorporating Services, Ltd., located at 7801 Folsom Boulevard, Suite 201, Sacramento, CA 95826.

## IV. THE FALSE CLAIMS ACT

14. The False Claims Act ("FCA") prohibits, among other actions, (a) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval to the Government and (b) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1).

15. The FCA defines "knowing" and "knowingly" to mean "that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

16. "Material" is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

17. Based on these provisions, Relator Axiom seeks to recover damages and civil penalties arising from Defendant VAST's presentation of false claims and material misrepresentations to the United States.

## V. FACTS

### A. The Commercial Space Industry and Private Astronaut Missions

18. In recent years, NASA has made it a priority to enable commercial industry to build, own, and operate space systems through public-private partnerships. *See* https://www.nasa.gov/humans-in-space/commercial-space.

19. The commercial space industry refers to a growing ecosystem of private companies and market-driven activities involved in launching, operating, and using space-based systems.

Historically, space exploration was dominated by government agencies like NASA. Over the past two decades, however, the industry has undergone a fundamental shift: governments now increasingly act as customers and partners, while private companies design, build, and operate much of the infrastructure. At a high level, the commercial space industry can be best understood as a multi-layered value chain. *See* https://www.deloitte.com/us/en/insights/industry/aerospace-defense/future-of-space-economy.html; *see also* https://umbrex.com/resources/how-industries-work/aerospace-defense/how-the-space-technology-satellite-services-industries-work/.

20. While the initial focus of the commercial space industry was satellite services, the industry is expanding into new commercial frontiers to include human spaceflight and tourism, commercial space stations for research and manufacturing that cannot happen easily when gravity is taken into account, and eventual lunar and deep-space activities.

21. Certain research and manufacturing opportunities are uniquely well-suited for microgravity. For example, in collaboration with private industry scientists, research on the International Space Station yielded insights into the development of a cancer treatment drug. *See* https://www.nasa.gov/missions/station/iss-research/space-station-research-informs-new-fda-approved-cancer-therapy. Researchers found that the relevant crystal growth in microgravity environments was much more uniform in size and distribution than those grown on Earth, which is expected to reduce cost and treatment time for patients taking the newly approved injectable. *Id.* Comparable research projects are one of the many innovations supported by the PAMs at issue here.

22. As a part of its strategy for "enabling a robust and competitive commercial economy in low Earth orbit," NASA conducted its first PAM, known as Axiom Mission 1 ("Ax-1") in April 2022. *See* https://www.nasa.gov/humans-in-space/private-astronaut-missions; *see also* https://www.nasa.gov/news-release/axiom-private-astronauts-headed-to-international-space-station.

23. A PAM is a commercially organized and funded crewed spaceflight to the International Space Station in which private astronauts conduct scientific, outreach, and

commercial activities, and which NASA supports as part of its strategy to develop a competitive commercial space economy in low Earth orbit. *See* https://www.nasa.gov/humans-in-space/private-astronaut-missions.

24. PAMs reflect the multi-layered value chain in the commercial space industry: a successful PAM involves a partnership between NASA; launch providers and spacecraft manufacturers; and companies like Axiom and VAST, which help organize and operate missions, including crew selection, training, mission planning and operations, payload research projects, and integration with NASA requirements.

25. NASA awards a Mission Specific Order to a contractor such as Axiom, known as a "PAM Provider," for each mission. To date, NASA has conducted four PAMs, with Axiom as the PAM Provider, and has contracted for an additional three PAMs—one with Axiom, one with VAST, and one with a third PAM Provider. *See* https://www.nasa.gov/news-release/nasa-selects-voyager-for-seventh-private-mission-to-space-station.

**B. PAM Contracts**

26. Under the contracts, the PAM Provider is responsible for mission planning, mission integration, and deliverables like the Mission Integration and Operations Management Plan ("MIOMP"). PAM Providers, in turn, collaborate with launch providers, which provide, among other things, the crew capsule and launch services for the mission.

27. PAM Providers' relationships with NASA are governed by their Basic Ordering Agreements, which supply the governing terms and conditions that apply to all PAMs performed by that PAM Provider.

28. The PAM Provider best meeting NASA's evaluation criteria for the given PAM is awarded the mission via a task order known as a Mission Specific Order under the BOA.

29. MSOs are issued to PAM Providers on a firm-fixed-price, or lump sum, basis, where portions of the sum are paid to the PAM Provider upon completion of "milestones" leading up to mission execution.

30. In addition, the MSO may separately include the value of Government Furnished Services ("GFS") and Government Furnished Equipment ("GFE") that NASA will provide to the PAM Provider in support of the mission.

31. The "milestones," which relate to phases of mission execution and require the contractor to provide the deliverables specified in the MSO, trigger partial payment of the MSO's firm-fixed price upon completion.

32. As discussed below, the MIOMP is a contractually required submission, subject to NASA's approval, in order for the PAM Provider to complete one of the milestones listed in the MSO. The MIOMP essentially contains the roadmap for the entire mission.

**C. Axiom's Participation in PAMs 1-4 and Development of its Proprietary MIOMP**

33. Relator Axiom contracted with NASA for the first five Private Astronaut Missions – PAM-1, PAM-2, PAM-3, PAM-4, and PAM-5. Axiom also refers to these as Ax-1, Ax-2, etc., to tie them to Axiom. Axiom has successfully completed the first four missions. PAM-1 (Ax-1) launched in April 2022, PAM-2 (Ax-2) launched in May 2023, PAM-3 (Ax-3) launched in January 2024, PAM-4 (Ax-4) launched in June 2025, and Axiom's work under PAM-5 is ongoing.

34. Axiom was awarded a BOA (No. 80JSC021G0001) with a period of performance of March 12, 2021, to March 11, 2026, for the provision of PAMs to the International Space Station. NASA issued four MSOs under this BOA resulting in Axiom Missions 1-4 (*i.e.*, PAMs 1-4).

35. When Axiom's first BOA was nearing expiration, Axiom's second BOA (No. 80JSC026G0003) was awarded on January 29, 2026, with a period of performance of January 31, 2026, to January 31, 2031. Axiom was simultaneously awarded the MSO for PAM-5 under this BOA on January 30, 2026.

36. In each of the relevant contracts between Axiom and NASA, NASA conditions its ongoing support for the mission on Axiom's ability to complete the mission's milestones. For example, Axiom's contract for PAM-5 includes an obligation to provide a MIOMP as a Data

Requirements Deliverable ("DRD"). DRDs are "required for each MSO in accordance with this MSO and/or Order Deliverables List" and are "the responsibility of the PAM Provider to execute, manage, and administer these DRDs, and provide status as required by NASA." For Ax-5, one such DRD is the Mission Integration and Operations Management Plan (MIOMP).

37. The MIOMP is a comprehensive operational blueprint that explains how a space mission will be planned, coordinated, and executed across all participating organizations and is a NASA requirement. A MIOMP defines the integration, operation, and management processes that govern how the mission will be carried out, including how NASA, the mission provider, and the transportation partners will interact throughout the mission lifecycle. The MIOMP is effectively a composite document that includes input from the PAM Provider as well as the launch provider.

38. Axiom substantially developed its PAM MIOMP over the series of four PAMs (Ax-1 through Ax-4), reflecting its earned experience and track record in delivering successful missions. Axiom's MIOMP reflects its capabilities developed and built from earlier missions and, over time, detailed operational experience, refined methodologies, and proprietary approaches to mission planning, integration, and execution. Each MSO contains requirements for the PAM Providers to conduct a post-flight review with NASA to identify anomalies and lessons learned. Through those post-flight iterations with NASA, and by the time of the Ax-4 MIOMP, the document reflected significant accumulated expertise, including technical and operational refinements that would not be available to a competitor without access to Axiom's internal materials. Moreover, the statements in the MIOMP are a reflection of Axiom's accumulated experience, expertise, and ability to deliver upon the mission plan as drafted. Refinements to the MIOMP reflect critical refinements in Axiom's operational understanding and capabilities. VAST's copying the plan and submitting as its own is not just a misappropriation of a competitor's confidential work, but a misrepresentation to NASA of preparation, knowledge, and capacity.

**D. PAM-6 and Defendant VAST's Fraudulent Conduct**

39. In March 2025, NASA solicited PAMs-5 and -6 simultaneously.

40. Around the same time as Axiom was awarded its second BOA and PAM-5 in early 2026, Defendant VAST was awarded a BOA (No. 80JSC026G0004) with a period of performance from February 12, 2026 to February 12, 2031.

41. One MSO has been issued for a single PAM by NASA to VAST under that BOA—(also referred to as VAST-PAM-1), which will be the sixth PAM authorized by NASA.

42. Contracts awarded by NASA in this context are not publicly available. However, because Relator Axiom has been awarded five PAMs between two BOAs under this NASA program, it is aware these documents are standardized by NASA and contain the same essential conditions of performance. On information and belief, the contractual obligations and milestone requirements between Defendant VAST and NASA likely include comparable, if not identical terms.

43. PAM-6 was Defendant VAST's first opportunity to be involved in a PAM; before PAM-6, Defendant VAST had no direct experience with Private Astronaut Missions.

44. At some point before June 3, 2026, VAST prepared and submitted a MIOMP to NASA in connection with PAM-6. On information and belief, VAST submitted the MIOMP to NASA at the Lyndon B. Johnson Space Center at 2101 NASA Parkway, Houston, TX 77058.

45. On information and belief, the submission of a MIOMP was a necessary pre-condition for payment. A MIOMP is a deliverable due during the "Phase I—Mission Planning" period, which, upon information and belief, is a precondition for the first milestone payment of Defendant VAST's contract with NASA for PAM-6.

46. On June 3, 2026, NASA notified Axiom that its sensitive information had been improperly included in a deliverable submitted by VAST.

47. NASA officials confirmed that the information contained in the document constituted Axiom-sensitive and proprietary information.

48. NASA advised that VAST's submission in some locations substituted "the PAM Provider" for Axiom's name, while in other instances retained Axiom's name and company details instead of replacing it with VAST's name. That the document retained residual references to Axiom in certain sections demonstrates that the underlying text originated with Axiom and was not independently authored by VAST.

49. Upon information and belief, the PAM-6 document included misappropriated content that reflected non-public, later-generation Axiom refinements and operational experience. These features were not generic to the industry, but rather reflected operational learnings, experience-based insights, and methodologies developed by Axiom across multiple prior missions.

50. Axiom has at all times kept its MIOMPs confidential. Axiom's contracts with NASA granted only Limited Data Rights to NASA for use of its work product, which is defined in the document to mean "data developed wholly or in part at private expense that embody **trade secrets** and are commercial or financial and **confidential** or **privileged**," and its MIOMP was clearly marked as such when submitted to NASA. (Emphasis in original).

51. Axiom has not provided authorization to any entity to release its confidential, sensitive information reflected in its MIOMPs.

52. Axiom has not provided its confidential, sensitive information to Defendant VAST.

53. In sum, the available evidence demonstrates that VAST's PAM-6 MIOMP was derived from Axiom's proprietary MIOMP materials, including content reflecting Axiom's accumulated operational experience, and that VAST, in submitting its MIOMP to NASA, misrepresented Axiom's proprietary information as its own work product.

54. In submitting the MIOMP to NASA and seeking payment and property in return, Defendant VAST submitted a false claim to the United States Government.

55. Because VAST copied Axiom's proprietary MIOMP information and knowingly sought to present the technical approach and performance capability reflected in the MIOMP as its own, the content of VAST's MIOMP is false and misleading. Upon information and belief,

this misrepresentation is material to the payment structure under the relevant MSO because milestone payments are conditioned on submission of DRDs by VAST and acceptance of deliverables by NASA.

**COUNT I**

**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presentation of False Claims to NASA**

56. Relator incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

57. Defendants knowingly presented, or caused to be presented, materially false or fraudulent claims for payment or approval to the United States government, in seeking payment under the order contract for PAM-6 governed by Basic Ordering Agreement No. 80JSC026G0004 by, *inter alia*, providing any DRDs, such as the MIOMP.

58. Upon information and belief, Defendant VAST submitted the MIOMP to NASA as part of its contractual obligation to satisfy a milestone condition under the PAM-6 MSO, the completion and approval of which is required for payment or advancement under the contract.

59. Said claim was presented with actual knowledge of its falsity or with reckless disregard of or deliberate ignorance to whether it was false.

60. By virtue of the false or fraudulent claim made by Defendant, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act or an amount to be determined at trial, plus a civil penalty of $14,308 to $28,619, adjusted for inflation, for each violation.

**COUNT II**

**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Presentation of False Statements to NASA**

61. Relator incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

62. Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.

63. The false records or statements at issue here include, but may not be limited to, assertions that the MIOMP Defendant VAST provided to NASA was its own and any claims included in the submitted MIOMP that VAST is able to perform in a way that it likely cannot.

64. The false records or statements were material in that they had a natural tendency to induce, or were capable of inducing, the payment or receipt of money or property.

65. Upon information and belief, VAST's assertions that the MIOMP it provided to NASA was its own work product were material to NASA's determination as to whether VAST met the necessary requirements to be eligible for payment under the relevant milestone in the contracts.

66. And VAST's claims included in the submitted MIOMP that VAST is able to perform in a way that it likely cannot are material to NASA's assessment of the completeness of the deliverable – here, the MIOMP – that would trigger a payment.

67. By virtue of the false record or statements made by Defendant, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act or an amount to be determined at trial, plus a civil penalty of $14,308 to $28,619, adjusted for inflation, for each violation.

**PRAYER FOR RELIEF**

68. As to Count I, Relator prays that judgment be entered against Defendant, ordering that:

a. The Defendant ceases and desists from violating the False Claims Act;

b. The Defendant pays not less than $14,308.00 and not more than $28,619.00, adjusted for inflation, for each violation of 31 U.S.C. § 3729 et seq., plus three times the amount of damages the United States has sustained because of Defendant's misconduct;

c. Relator be awarded the maximum Relator's share allowed pursuant to 31 U.S.C. § 3730(d);

d. Relator be awarded all costs of this action, including attorney's fees and costs pursuant to 31 U.S.C. § 3730(d);

e. Defendant be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the damages, penalties, fines, and costs awarded by the Court.

f. The United States and Relator be awarded such other relief as the Court deems just and proper.

69. As to Count II, Relator prays that judgment be entered against Defendant, ordering that:

a. The Defendant ceases and desists from violating the False Claims Act;

b. The Defendant pays not less than $14,308.00 and not more than $28,619.00, adjusted for inflation, for each violation of 31 U.S.C. § 3729 et seq., plus three times the amount of damages the United States has sustained because of Defendant's misconduct;

c. Relator be awarded the maximum Relator's share allowed pursuant to 31 U.S.C. § 3730(d);

d. Relator be awarded all costs of this action, including attorney's fees and costs pursuant to 31 U.S.C. § 3730(d);

e. Defendant be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the damages, penalties, fines, and costs awarded by the Court.

f. The United States and Relator be awarded such other relief as the Court deems just and proper.

**JURY TRIAL**

70. Pursuant to Rule 38 of the Fed. R. Civ. P., Relator demands a trial by jury.

Respectfully,

DATED: June 19, 2026

**DLA PIPER LLP (US)**

BY: *__/s/ Gray Stratton*
Gray Stratton (TX Bar No. 24075443)
845 Texas Avenue, Suite 3800
Houston, TX 77002
(713) 425-8400
(713) 425-8401 (Fax)
gray.stratton@us.dlapiper.com

Josh Gardner (*pro hac vice* forthcoming)
500 8th Street, NW
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 (Fax)
josh.gardner@us.dlapiper.com

*Attorneys for Relator Axiom*